NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| SPARK INNOVATORS CORP., | Civil Action No. 14-1771(FSH) |
| Plaintiff, | |
| v. | **OPINION** |
| TELE MARKETERS, INC., *et al.*, | Date: June 19, 2014 |
| Defendants. | |

**HOCHBERG, District Judge:**

This matter comes before the Court upon Defendant Tele Marketers, Inc.'s ("Tele Marketers") and Defendant Vinay Gulab Advani's ("Mr. Advani") motions to dismiss [Dkt. Nos. 10 & 11], pursuant to Federal Rule of Civil Procedure 12(b)(6). The Court has reviewed the submissions of the parties and considers the motions pursuant to Federal Rule of Civil Procedure 78.

### I.   BACKGROUND[1]

On March 19, 2014, Plaintiff Spark Innovators Corp. ("Spark") filed a Complaint against Defendants Tele Marketers and Mr. Advani. Mr. Advani is the President of Tele Marketers. Memorandum in Support of Defendant Vinay Gulab Advani's Motion to Dismiss, p. 2. Spark's Complaint alleges Defendants are liable for "copyright infringement (Count I), unfair competition (Counts II, III, and V), and federal dilution (Count VI)."[2] In accordance with

---

[1] These facts are taken from Plaintiff's Complaint unless otherwise noted.

[2] There is no count IV. In its Complaint, Plaintiff skips from count III to count V.

Section 43(a) of The Lanham Act, Plaintiff seeks "injunctive relief and to recover Defendant's profits, actual damages, enhanced profits and damages, costs, and reasonable attorney's fees pursuant to 15 U.S.C. § 1125(a), 1116, and 1117." In accordance with N.J.S.A. 56:4-2, Plaintiff seeks an injunction and treble damages.

"On or about April 2012, Spark commenced marketing a reusable coffee pod designed for use with a single serving brewer under the trademark [Café Cups]. Spark has sold the [Café Cups] product continuously since that date to a large number of prominent retail chains[,]" and has spent 9.6 million dollars on advertising Café Cups. Spark innovated package art for such Café Cups, which Spark alleges are valid and legally protectable marks. "Spark has duly complied with . . . the Copyright Law of the United States . . . with respect to the [Café Cups] retail packaging and the [p]ackage [a]rt[,]" receiving a certificate of copyright registration from the Register of Copyrights for its package art (Copyright Registration Nos. VA 0001836464/2012 and VA 0001860186/2012).

Furthermore, Spark alleges after it began marketing and selling Café Cups, Tele Marketers commenced marketing and selling a similar product, contained within packaging unlawfully similar to Sparks' Café Cups packaging, under the name "Clever Coffee Capsule," which is also "a reusable single coffee filter that is compatible with specific brewing systems (e.g. the Keurig ® System)." Exhibits of both products are included in both parties' pleadings. Spark maintains Tele Marketers' packaging of Clever Coffee Capsule constitutes grounds of unfair competition since such packaging will confuse consumers as to the source of the product (e.g., consumers who buy Clever Coffee Capsules will think Clever Coffee Capsules is provided by the same source as Café Cups). Spark further alleges Mr. Advani intentionally directed,

2

authorized, and controlled Tele Marketers' marketing of the purportedly unlawful similar packaging.

On April 23, 2014, pursuant to Federal Rule of Civil Procedure 12(b)(6), Defendants filed Motions to Dismiss all counts of Spark's Complaint for failure to state a claim. On May 6, 2014, Plaintiff filed an Opposition to Defendants' Motions to Dismiss. Within such Opposition, Spark agreed to the dismissal of copyright infringement (Count I) and federal dilution (Count VI). On May 12, 2014, Defendants filed a Reply Brief in support of Defendants' Motions to Dismiss.

## II.     STANDARD OF REVIEW

In order to survive a defendant's motion to dismiss for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6), plaintiffs must meet the pleading requirements set forth in Federal Rule of Civil Procedure 8(a). *Jurista v. Amerinox Processing, Inc.*, 492 B.R. 707, 744 (D.N.J. 2013). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). Such short and plain statement "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see also Phillips v. County of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) ("[S]tating . . . a claim requires a complaint with enough factual matter (taken as true) to suggest the required element. This does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element.") (internal quotations omitted). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the "grounds" of his 'entitle[ment] to relief'

requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omitted). Also, "all reasonable inferences that can be drawn from the pleading are drawn [by the court] in favor of the pleader." (5B CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1357 (3d ed. 2004).

"Recently, the Court of Appeals for the Third Circuit expounded on the *Twombly / Iqbal* line of cases and explained that a court must follow a three-step approach when determining the sufficiency of a complaint: 'First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'" If Plaintiff meets this plausibility standard, Defendants' motions to dismiss such Plaintiff's complaint for failure to state a claim, must be denied. *Myers v. Shaffer*, 02:11-CV-01107, 2012 WL 3614614, at *15-16 (W.D. Pa. Aug. 21, 2012) (citing *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011)).

"As a general matter, a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings. However, an exception to the general rule is that a 'document *integral to or explicitly* relied upon in the complaint' may be considered 'without converting the motion [to dismiss] into one for summary judgment.'" *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (internal citations omitted) (emphasis in original).

### III. DISCUSSION

Defendants move to dismiss on three main grounds.  First, Defendant Tele Marketers asserts the marks which Spark specifies (Cafe Cups package art), are not valid and legally protectable marks.  Second, Tele Marketers contends no likelihood of confusion exists.  And third, Defendant Mr. Advani asserts Spark has not plead more than conclusory statements with respect to his individual liability.

To state a plausible claim for relief, Spark must provide a factual basis supporting grounds of unfair competition against both Defendants.  The test for unfair competition under New Jersey common law "is identical to the test for federal unfair competition and infringement; whether a likelihood of confusion exists." *Apollo Distributing Co. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988).  Also, the test for unfair competition under section 43(a) of the Lanham Act "is equivalent to the New Jersey Statutory test under 56:4-1:  "(1) he or she owns the mark in question; (2) the mark is valid and legally protectable; and (3) the alleged infringer's use of the mark to identify goods or services is likely to create confusion concerning their origin." *See Checkpoint Sys., Inc. v. Check Point Software Techs., Inc.*, 269 F.3d 270, 279-80 (3d Cir. 2001); *Apollo Distrib. v. Jerry Kurtz Carpet Co.*, 696 F. Supp. 140, 143 (D.N.J. 1988).

Thus, a judgment rendered under section 43(a) of the Lanham Act is dispositive of New Jersey statutory and common law counts of unfair competition.  *See Pharmacia Corp. v. Alcon Lab., Inc.*, 201 F. Supp. 2d 335, 386 (2002).  A complaint that meets the plausibility standard for a claim under section 43(a) of the Lanham Act, will also meet the plausibility standard for a claim of unfair competition under both New Jersey statutory and common law.  *See id.*

### A. Ownership

"[T]he ownership of an unregistered mark is settled by the doctrine of first appropriation. That is, 'the first party to adopt a trademark can assert ownership rights, provided it continuously uses it in commerce.'" [3] *Zany Toys, LLC v. Pearl Enters., LLC*, 2014 U.S. Dist. LEXIS 70852, at *22 (D.N.J. May 23, 2014) (citing *Ford Motor Co. v. Summit Motor Products, Inc.*, 930 F.2d 277, 292 (3d Cir. 1991). Spark asserts it is the original creator of Café Cups package art, and "is the sole owner of all right [sic], title, and interest in and to the copyright in the [p]ackage [a]rt." This element is undisputed. Accordingly, the Court accepts Spark as the owner of the marks at issue.

### B. Valid and Legally Protectable

Defendant Tele Marketers argues that Sparks' marks (Café Cups package art) are not valid and legally protectable. Spark's allegations include mark specifications of its packaging designs such as: "featuring brown coffee beans in the background, a green leaf on its logo . . . with the display for the scooped ground beans, and . . . the bullet points featured and the language stated within the bullet points. . . ." Tele Marketers claims these specifications are not valid and legally protectable marks. Defendants aver, albeit without citation nor illustration, the background image of coffee beans, "the display of scooped ground beans[,]" and the bullet points on the package which describe reasons to purchase Café Cups are not protectable "when used in connection with a coffee-related product."

The Lanham Act provides unregistered trademark protection to manufacturers for "any word, term, name, symbol, or device, or any combination thereof . . . which . . . is likely to cause

---

[3] In its Complaint, Plaintiff Spark does not provide any proof showing it owns registered trademarks for its Café Cups packaging.

confusion . . . as to the origin . . . of his or her goods . . . ." 15 U.S.C. § 1125(a); *see also Wal-Mart Stores v. Samara Bros.,* 529 U.S. 205, 209 (2000) ("[t]he breadth of the definition of marks registrable . . . and . . . actionable by § 43(a), has been held to embrace not just word marks, such as 'Nike,' and symbol marks, such as Nike's 'swoosh' symbol, but also 'trade dress' — a category that originally included only the packaging . . . ."). Unregistered trademarks (including trade dress), may be protected if such marks are nonfunctional and distinctive.[4] *Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.,* 963 F.2d 628, 633 (3d Cir. 1992); *see Wal-Mart Stores*, 529 U.S. at 209. Generally, a nonfunctional feature is a feature used for identification purposes only. *SK&F, Co. v. Premo Pharmaceutical Lab., Inc.*, 625 F.2d 1055, 1063 (3d Cir. 1980) ("Proof of nonfunctionality generally requires a showing that the element of the product serves no purpose other than identification."). Neither party mentions the functionality of Spark's package art, thus this element is not in dispute. Even if this was in dispute, it is clear that Spark's package art does not serve any functional purpose.

Further, Spark contends its package art is protected since it is distinctive. Unregistered marks may be offered protection if they are distinctive. "Marks are evaluated within the following range of distinctiveness, from inherently distinctive to nondistinctive: '(1) arbitrary or fanciful (such as 'KODAK'); (2) suggestive (such as 'COPPERTONE'); (3) descriptive (such as 'SECURITY CENTER'); and (4) generic (such as 'DIET CHOCOLATE FUDGE SODA').'" *Zany Toys, LLC*, 2014 U.S. Dist. LEXIS 70852, at *15 (citing *Freedom Card, Inc. v. JP Morgan*

---

[4] In Spark's Complaint, it asserted a claim of trade dress infringement, although in its Memorandum of Law in Support of its Opposition to Defendants' Motions to Dismiss, Spark does not mention trade dress. In such Memorandum, the claims Spark asserts it is pursuing are: "unfair competition under section 43 (a) of the Lanham Act, unfair competition under New Jersey's unfair competition act, [and] unfair competition by Defendants under New Jersey law[.]"

*Chase, Inc.,* 432 F.3d 463, 472 (3d. Cir. 2005)).  The former two categories are offered protection, but descriptive and generic marks are offered no protection, unless such marks acquire secondary meaning.  *Id.*; *see also Wal-Mart Stores*, 529 U.S. at 205, 212, 216 (explaining design and color are not inherently distinctive unless secondary meaning has been acquired). Although the line between suggestive and descriptive marks is thin, Café Cups package art is more likely characterized as descriptive since it includes ingredients and language that describes the product quality and its uses.  *See Vista India v. Raaga, LLC*, 501 F.Supp.2d 605, 617 (D.N.J. 2007) ("A term is descriptive if it forthwith conveys an immediate idea of the ingredients, qualities or characteristics of the goods.") (internal quotation marks and citation omitted).

Moreover, descriptive marks are considered nondistinctive, but still may be protectable if such marks acquire secondary meaning.  Secondary meaning is acquired when, "in the minds of the public, the primary significance of a [mark] is to identify the source of the product rather than the product itself."  *Inwood Laboratories, Inc.* v. *Ives Laboratories, Inc.*, 456 U.S. 844, 851, n.11 (1982) (citing *Kellogg Co. v. National Biscuit Co.*, 305 U.S. 111, 118 (1938)).  It is sufficient for the public to associate the origin of the product to one source, even though such source's identity may be unknown to the public.  *General Motors Corp. v. Lanard Toys, Inc.*, 468 F.3d 405, 418, (6th Cir. 2006);  *Union Carbide Corp. v. Ever-Ready Inc.*, 531 F.2d 366, 380 (7th Cir. 1976) ("To establish secondary meaning it is not necessary for the public to be aware of the name of the manufacturer from which a product emanates.  It is sufficient if the public is aware that the product comes from a single, though anonymous, source.").

Furthermore,  factors courts consider to determine whether a product has acquired secondary meaning include: "(1) the extent of sales and advertising leading to buyer association; (2) length of use; (3) exclusivity of use; (4) the fact of copying; (5) customer surveys; (6)

customer testimony; (7) the use of the mark in trade journals; (8) the size of the company; (9) the number of sales; (10) the number of customers; and, (11) actual confusion." *Zany Toys, LLC v. Pearl Enters., LLC*, 2014 U.S. Dist. LEXIS 70852, at *20 (citing *Duffy v. Charles Schwab & Co., Inc.*, 97 F. Supp. 2d 592, 599 (D.N.J. 2000)).  In *Checkpoint Sys.*, the court found the plaintiff manufacturer had achieved secondary meaning for its marks after it spent millions of dollars on advertising, and achieved high brand recognition amongst its consumers.  269 F.3d at 282-83.  Similarly, here, Spark allegedly spent 9.6 million dollars on advertising, and has "achieved brand recognition by launching an extensive media campaign on television" via infomercials played on major networks.  Thus, it is plausible that Spark has achieved secondary meaning for its package art, and is therefore entitled to legal protection for its descriptive package art.

### C. Likelihood of Confusion

Defendant Tele Marketers argues no likelihood of confusion exists between the package art of the Café Cups and the package art of the Clever Coffee Capsules.  "To prove likelihood of confusion, plaintiffs must show 'consumers viewing the mark would probably assume the product or service it represents is associated with the source of a different product or service identified by a similar mark.'"  *Checkpoint Sys.*, 269 F.3d at 280 (quoting *Scott Paper Co. v. Scott's Liquid Gold, Inc.*, 589 F.2d 1225, 1229 (3d Cir. 1978)).  The following factors, deemed the *Lapp f*actors, are considered to determine likelihood of confusion:

(1) the degree of similarity between the owner's mark and the alleged infringing mark;
(2) the strength of the owner's mark;
(3) the price of the goods and other factors indicative of the care and attention expected of consumers when making a purchase;
(4) the length of time the defendant has used the mark without evidence of actual confusion arising;
(5) the intent of the defendant in adopting the mark;

9

>   (6) the evidence of actual confusion;
>   (7) whether the goods, competing or not competing, are marketed through the same channels of trade and advertised through the same media;
>   (8) the extent to which the targets of the parties' sales efforts are the same;
>   (9) the relationship of the goods in the minds of consumers, whether because of the near-identity of the products, the similarity of function, or other factors;
>   (10) other facts suggesting that the consuming public might expect the prior owner to manufacture both products, or expect the prior owner to manufacture a product in the defendant's market, or expect that the prior owner is likely to expand into the defendant's market.

*A&H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 215 (3d Cir. 2000). Such factors are not all relevant, "a district court should utilize the factors that seem appropriate to a given situation." *Id.* No factor is determinative, the relevant factors must be weighed against one another on a fact-specific basis. *Checkpoint Sys.,* 269 F.3d at 280.

Accordingly, Tele Marketers proclaims no likelihood of confusion exists between the parties' products because "the packaging designs of the Clever Coffee Capsule and the Café Cups are extremely different in color, shape and style such that there can be no likelihood of confusion." Tele Marketers specifically lists many differences between the products such as the color (green Clever Coffee Capsules vs. red and black Café Cups), the number of containers (3 Clever Coffee Capsules vs. 4 Café Cups), the color and placement of the coffee scooper (white scooper tucked behind Clever Coffee Capsules vs. black scooper placed on the side of the Café Cups), and different text on the packages. In addition, Tele Marketers asserts that Spark failed to demonstrate *actual* confusion. Tele Marketers attached diagrams to their briefs for a visual comparison, arguing no similarities exist sufficient to show a likelihood of confusion.

Conversely, Spark alleges the marks of the parties' products are strikingly similar, and actual confusion is not necessary to show a likelihood of confusion. Third Circuit case law has established that actual confusion is not necessary to prove a likelihood of confusion. *Checkpoint Sys.*, 269 F.3d at 291. Moreover, a showing of mark similarity for products coexisting in the

10

same market, is considered the most important *Lapp* factor to determine likelihood of confusion. *See id.* at 300-01; *see also A&H Sportswear, Inc.*, 237 F.3d at 216 ("The single most important factor in determining likelihood of confusion is mark similarity."). The "Third Circuit holds that a court may consider only the marks' similarity and need not analyze the remaining confusion factors." *A&H Sportswear, Inc.*, 237 F.3d at 214. The similarities pointed out by Spark include:

> featuring brown coffee beans in the background, a green leaf on its logo which was copied as a green swirl on the Clever Capsule logo, with the display for the scooped ground beans, and the similarities continue to the bullet points featured and the language stated within the bullet points. The similarities are so strong that it is difficult when glancing at the packaging to distinguish the difference within the retail packaging of the two products.

Spark also directs the Court's attention to the diagrams of each products' packaging designs, which are attached to its Complaint.[5]

Moreover, other *Lapp* factors Spark addresses are mark strength, and Tele Marketers' intent to confuse consumers. Although Spark provides only conclusory statements regarding intent, Spark does provide a factual basis to show its marks' strength. Mark strength is very similar to showing secondary meaning, *see supra* p. 8-9, which can be generated by significant advertising "which creates in the minds of consumers an association between the mark and the provider of the [product] advertised under the mark." *JR Cigar, Inc. v. GoTo.com, Inc.*, 437 F. Supp. 2d 273, 287 (D.N.J. 2006). Spark's factual basis includes: "brand recognition for its product through its media campaign seen on major networks such as CBS and Fox News during prime time viewing[;]" 9.6 million dollars spent on advertising; infomercials played in Bed Bath & Beyond; "[t]he [p]ackage [a]rt has become associated with the [Café Cup] product and has acquired distinctiveness as a recognized source identifier and embodiment of Spark's good will."

---

[5] In a motion to dismiss, "[t]he court may consider documents which are attached to or submitted with the complaint." *Pryor v. NCAA*, 288 F.3d 548, 552 (3d Cir. 2002).

Taking these facts as true, the Court finds this factual basis to be an adequate demonstration of considerable mark strength.  In *Sabinsa Corp. v. Creative Compounds, LLC*, 609 F.3d 175, 180 (3d Cir. 2010), the court found a likelihood of confusion based on the first two *Lapp* factors—mark similarity and mark strength.  Similarly, Spark has presented facts sufficient to show mark similarity, along with an adequate showing of mark strength.  Such factual basis, along with a visual comparison of the marks at issue, show a plausible likelihood of confusion.  Due to the aforementioned reasons, Tele Marketers' Motion to Dismiss on these grounds is denied since Spark has plausibly shown it owns a valid and legally protectable mark, and a likelihood of confusion exists.

### D.  Counts Against Mr. Advani

Defendant Mr. Advani argues his Motion to Dismiss Spark's Complaint for failure to state a claim should be granted because Spark's allegations against Mr. Advani are conclusory and absent facts sufficient to sustain a plausible claim for relief.  Mr. Advani avers that because Spark's Complaint is devoid of facts suggesting he knowingly and significantly participated in the alleged infringement, the unfair competition counts against him should be dismissed.  *See Elec. Lab. Supply Co., Inc. v. Cullen*, 977 F.2d 798, 807 (3d Cir. 1992) ("Dosco indicates that a person who knowingly and significantly participates in another's act of trademark infringement is himself guilty of infringement.").  Spark is suing Mr. Advani personally in his individual capacity as an officer and shareholder of Tele Marketers for unfair competition.  Spark alleges Mr. Advani "is a shareholder and officer of Defendant Tele Marketers . . . and directs and controls the activities of said company, including the activities complained of herein."  Spark also claims Mr. Advani advertises, distributes, offers for sale, and sells products of Tele Marketers in interstate commerce, over the internet, and in New Jersey.  In addition, Spark

alleges Mr. Advani willfully and maliciously intended to infringe on Spark's Café Cups package art, and therefore he had knowledge, directed and intended such infringement.  Mr. Advani maintains such facts are insufficient to sustain a plausible claim for relief.

"In order to hold a corporate officer liable, a plaintiff must pierce the 'corporate veil,' which requires a showing that: (1) the corporation is organized and is operating as a mere instrumentality of a shareholder, (2) the shareholder uses the corporation to commit fraud, injustice or circumvent the law, and (3) the shareholder fails to maintain the corporate identity." *Natralite Filters, Inc. v. Rexel, Inc.*, 2012 U.S. Dist. LEXIS 20522, at *14 (D.N.J. Feb. 17, 2012) (citing *Bd. of Trs. of Teamsters Local 863 Pension Fund v. Foodtown, Inc.*, 296 F.3d 164, 171-72 (3d Cir. 2002)).  A defendant's motion to dismiss is granted when the plaintiff fails to address such elements required to pierce the corporate veil.  *Natralite Filters*, 2012 U.S. Dist. LEXIS 20522, at *14.  In *Natralite Filters*, the plaintiff's claims against a corporate officer were dismissed because the plaintiff failed to allege facts sufficient to pierce the corporate veil.  *Id.* at 15.  Likewise, Spark fails to allege facts sufficient to pierce the corporate veil.  Thus, Mr. Advani's Motion to Dismiss would be granted under this theory.

Notwithstanding, corporate officers can alternatively be held liable for unfair competition if they participate in the alleged unfair competition.  *Donsco, Inc. v. Casper Corp.*, 587 F.2d 602, 606 (3d Cir. 1978); *see Elec. Lab. Supply Co., Inc.*, 977 F.2d 798, 807 (3d Cir. 1992).  A corporate officer participates in unfair competition when he authorizes and approves of such unfair competition.  *Donsco*, 587 F.2d at 606.  To defeat a motion to dismiss, plaintiff must present a sufficient factual basis showing the accused corporate officer is individually liable for unfair competition; however, plaintiff is not required to plead evidence.  *See Green v. William Mason & Co.*, 996 F. Supp. 394, 397 (D.N.J. 1998) (citing *Sandler v. Eastern Airlines, Inc*, 649

F.2d 19, 20 (1st Cir. 1981); *see also Natralite*, 2012 U.S. Dist. LEXIS 20522, at *15-16.  In *Donsco*, the court found the accused company president personally liable for unfair competition when his responsibilities "included 'arrangements of marketing services[,]'" which the court found to support a showing of authorization and approval of the alleged unfair competition, and thus participation of unfair competition.  *Donsco, Inc.,* 587 F.2d at 606 (3d Cir. 1978).  Comparatively, in regard to Mr. Advani's liability, Spark has alleged Mr. Advani directs, controls, advertises, markets, and sells Tele Marketers's products.  This factual basis is sufficient to plausibly show Mr. Advani authorized and approved the alleged unfair competition, and thus participated in such unfair competition.  Consequentially, Mr. Advani's Motion to Dismiss is denied.[6]

## IV. CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss are Granted in part, and Denied in part.

s/ Hon. Faith S. Hochberg  
Hon. Faith S. Hochberg, U.S.D.J.

---

[6] Defendants claim entitlement to reasonable attorney's fees and costs.  Both Defendants profess entitlement to reasonable attorney's fees and costs under 17 U.S.C. § 505, since Spark submitted to dismissal of counts I and VI (copyright infringement and federal dilution), making Defendants the prevailing party with respect to counts I and VI.  Defendants also request the Court to award such fees under any other remedy.  "[A]ttorney's fees are to be awarded to prevailing parties only as a matter of the court's discretion. 'There is no precise rule or formula for making these determinations,' but instead equitable discretion should be exercised 'in light of the considerations . . . identified."  *Fogerty*, 510 U.S. 517 at 534 (citing *Hensley* v. *Eckerhart*, 461 U.S. 424, 436-437 (1983)).  In exercising its discretion, courts consider, *inter alia*, "frivolousness, motivation, objective unreasonableness (both in factual and in the legal components of the case) and the need in particular circumstances to advance considerations of compensation and deterrence."  *Lieb*, 788 F.2d at 156.  Considering the similarity between the elements needed to prove copyright infringement, unfair competition, and federal dilution, and considering the plausibility of Spark's unfair competition claims, Spark's claims are not frivolous nor objectively unreasonable.  Also, Spark's original claims collectively may have been a strategic maneuver.  For the aforementioned reasons, Defendants' request for attorney's fees and costs is denied.